Rec'd in hand 8/5/13

TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED: —
TORT — MOTOR VEHICLE TORT — CONTRACT —
EQUITABLE RELIEF — OTHER

## COMMONWEALTH OF MASSACHUSETTS

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION

MIDDLESEX, ss

No. 13-3392

Wadley Pierre, Plaintiff(s)

v.

President and Fellows of Harvard College, Martin Breslin and Richard Spingel, Defendant(s)

*A TRUE COPY ATTEST — DEPUTY SHERIFF Middlesex County — DATE OF SERVICE 8-5-13*

## SUMMONS

To the above-named Defendant: Richard Spingel

You are hereby summoned and required to serve upon Joseph Sulman plaintiff's attorney, whose address is 185 Devonshire St. Suite 502 Boston MA 02110, an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at 200 Trade Center Woburn MA 01801 either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, **Barbara J. Rouse**, Esquire, at ..................................................

the .................................. day of ..................................

.................., in the year of our Lord .......................... .

............................................
Clerk

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

FORM NO. SUP. — 001

TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED: —     5/5/13   SF
                        TORT — MOTOR VEHICLE TORT — CONTRACT —   in hand
                        EQUITABLE RELIEF — OTHER

## COMMONWEALTH OF MASSACHUSETTS

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
No. 13-3392

......MIDDLESEX......, ss

......Wadley Pierre......, Plaintiff(s)

v.

President and Fellows of Harvard College, Martin Breslin and Richard [illegible], Defendant(s)

*A TRUE COPY ATTEST / DEPUTY SHERIFF / Middlesex County / [date] / DATE OF SERVICE*

## SUMMONS

To the above-named Defendants President and Fellows of Harvard College,

You are hereby summoned and required to serve upon ...Joseph L. Sulman...... plaintiff's attorney, whose address is ...185 Devonshire St., Suite 502 Boston MA 02110......, an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at ...200 Trade Center Woburn MA 01801...... either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, **Barbara J. Rouse**, Esquire, at ......................................................
the .................................. day of ..................................
.................................., in the year of our Lord .................................. .

.................................................. 
Clerk

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

FORM NO. SUP. — 001

TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED: —
TORT — MOTOR VEHICLE TORT — CONTRACT —
EQUITABLE RELIEF — OTHER

## COMMONWEALTH OF MASSACHUSETTS

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION

MIDDLESEX , ss

No. 13-3392

Wadley Pierre, Plaintiff(s)

President and Fellows of Harvard College, Martin Beslin and Richard Sobol Defendant(s)

### SUMMONS

To the above-named Defendant: Martin Beslin,

You are hereby summoned and required to serve upon Joseph Sulman plaintiff's attorney, whose address is 185 Devonshire St Suite 502 Boston MA 02110, an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at 200 Trade Center Woburn MA 01801 either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, **Barbara J. Rouse**, Esquire, at .................................................
the ....................................... day of .......................................
...................., in the year of our Lord .......................................

.................................................... Clerk

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

FORM NO. SUP. — 001

COMMONWEALTH OF MASSACHUSETTS

Middlesex ss.                                                                                 Superior Court

| | |
|---|---|
| WADLEY PIERRE, <br><br> Plaintiffs, <br><br> v. <br><br> PRESIDENT AND FELLOWS OF HARVARD COLLEGE, MARTIN BESLIN, and RICHARD SPINGEL, <br><br> Defendants. | C.A No. _____ <br><br> 13-3392 <br><br> JURY DEMAND |

**COMPLAINT AND JURY DEMAND**

i. Introduction

1. Plaintiff Wadley Pierre is a Haitian-born black resident of the United States and an employee of Harvard University, working in its Dining Services department. Throughout his employment, Pierre has been subjected to hostility and discriminatory treatment on the basis of race and national origin and forced to work in an environment pervaded by hostility to black and Haitian employees. He has also been subjected to blatant retaliation for asserting his rights not to be discrimination against. After he complained about one incident where a manager called him "nigger," Harvard removed Mr. Pierre from his position as a truck driver and returned him to a lower-paying position. After he filed his administrative complaint of discrimination, Harvard reduced his hours and forced him – for no reason whatsoever – to disclose confidential medical information. These retaliatory actions increased the already-heavy emotional and financial strain that working at Harvard has caused Plaintiff. He now files this action against Harvard for violation of his rights against employment discrimination and retaliation under Chapter 151B, and seeks lost wages, emotional distress damages, and a recovery of reasonable attorneys' fees.

### ii. Parties

2. Plaintiff Wadley Pierre is a Haitian-born black resident of Massachusetts, an employee of Harvard University, and a resident of Norwood, Massachusetts.

3. Defendant Harvard University is a university located in Cambridge, Massachusetts that operates a dining services department known as Harvard University Dining Services.

4. Martin Breslin is the Director of Culinary Operations at Harvard University Dining Services and, upon information and belief, a resident of Massachusetts.

5. Defendant Richard Spingel is the production manager at the Culinary Support Group at Harvard University Dining Services and, upon information and belief, a resident of Massachusetts.

### iii. Facts

6. Mr. Pierre, who was born in Haiti and immigrated to the United States in 2003, began working as a storekeeper for Harvard University Dining Services ("HUDS") in its Culinary Support Group "(CSG") in January 2010. His employer is Harvard University ("Harvard").

7. On or about September 10, 2011, Mr. Pierre's position changed, and he split time between serving as a storekeeper and a truck driver. He now worked 24 hours per week as a storekeeper, and 16 hours per week as a truck driver. He earned approximately $2.50 dollars more per hour as a truck driver than as a storekeeper.

8. Working as a truck driver required Mr. Pierre to deliver food items to the various dining halls on the campus of Harvard. He performed his job well and liked doing it.

9. In or around October 2011, some food items that Mr. Pierre needed to deliver to the dining halls were not ready on time, and so Mr. Pierre was late arriving at each of the dining halls. The manager of Dunster-Mather dining hall, Donald Leonard, met Mr. Pierre outside his dining hall and berated Mr. Pierre for being late. Leonard began his tirade by saying: "Look at this nigger." Mr. Pierre completed his delivery and then left Dunster-Mather while Leonard yelled at him to stay and count the items to ensure everything was delivered properly.

10. Mr. Pierre immediately reported the racial slur to his direct supervisor, Richard Spingel. Spingel told Mr. Pierre just to ignore it.

11. Two days later, Mr. Pierre came into work and Spingel told him that Defendant Martin Breslin, the Director of Culinary Operations at CSG, was upset that Mr. Pierre did not stay to count the food items with Leonard at Dunster-Mather. Spingel yelled at Mr. Pierre about this. Mr. Pierre then met with two union representatives, Shawn Higgins and Aaron Duckett, along with Spingel and Brian Corcoran, the Executive Sous Chef at CSG who also supervises Mr. Pierre, and reported the racial slur again. He told them that he wanted everything reported and put in his file.

12. On or around that same date, Mr. Pierre overhead Breslin saying to one of the dining hall managers, Arthur Robbins, that he would do "whatever it takes" to get Mr. Pierre off the truck.

13. Sometime in February or March 2012, Breslin informed Mr. Pierre that he was going to be bumped out of his truck driver position by a more senior employee and would return to working forty hours per week as a storekeeper.

14. On March 22, 2012, Breslin and a representative from human resources met with Mr. Pierre to discuss his change in position. Breslin told Mr. Pierre that a more senior employee,

Ralph DiBaccio, was going to bump Mr. Pierre out of his truck driver position because DiBaccio's position was being given to someone else.

15.     The bumping was purportedly being done according to the collective bargaining agreement ("CBA") between Harvard and Mr. Pierre's union, AFL-CIO Local 26, Unite Here. However, Breslin never offered Mr. Pierre the opportunity to bump a less senior member of his union at HUDS, despite the CBA's clear provision requiring this and Mr. Pierre being more senior than many such employees.

16.     Additionally, the CBA required Harvard not to reduce Mr. Pierre's overall pay despite bumping him. In other words, Harvard was required to continue to pay Mr. Pierre, after he was bumped, the higher truck driver wage for the hours that he had worked in that classification. However, after bumping him, Harvard only paid Mr. Pierre his lower storekeeper wage. In contrast, Harvard continued to pay a white employee who had been bumped out of his position at HUDS the higher wage for the hours he had worked in the higher classification.

17.     Mr. Pierre filed a grievance about the bumping process on or about March 29, 2012. Harvard has not responded to the grievance, however.

18.     Mr. Pierre asked his union representative nearly every day after the "nigger" incident for a copy of what the union had sent HUDS regarding the incident. Shawn Higgins, the union representative, told him that Breslin and HUDS human resources knew about the incident. Finally, on April 6, 2012, when it became clear that there had not been any written documentation about the incident, Higgins helped Mr. Pierre draft a letter reporting the incident. Mr. Pierre signed the letter along with Higgs and another union representative, Aaron Duckett.[1]

---

[1] The letter incorrectly dates the incident as occurring on November 5, 2011. It also inaccurately states that Mr. Pierre was called "negro," and not "nigger." Higgins told Mr. Pierre that he was uncomfortable writing "nigger" and that "negro" meant the same thing.

4

19. Sometime later, Mr. Pierre learned that Breslin and Spingel instructed Higgins to concoct a story that Mr. Pierre did not want to report the racial slur incident. Higgins is the employee who caused Mr. Pierre to be bumped when his position was eliminated, causing a trickle-down effect on Mr. Pierre.

20. There is widespread discrimination and harassment directed at black employees in HUDS and particularly black employees from Haiti. Mr. Pierre has directly witnessed the some of the discrimination and has learned about the rest from others, as the working group at HUDS is not large and this type of information is shared quickly and widely between employees.

21. The hostility toward black and Haitian employee by supervisors at HUDS has created an intimidating environment for Mr. Pierre that significantly interferes with his ability to perform his job. Worse of all, Harvard is aware of the hostility and tolerates it by not taking appropriate action to deter the behavior.

22. Some examples of the hostility include:

   a. A week or so prior to when Mr. Pierre began his employment with HUDS, a major earthquake hit Haiti, causing massive damage and loss of life. When Mr. Pierre began work, a female employee born in Haiti was discussing her upcoming trip at a staff meeting when a white manager, Arthur Robbins, told the employee that he was afraid of her traveling to Haiti because she would bring back disease, like cholera. The comment became widely known among HUDS employees and deeply offended the Haitian employee and Mr. Pierre.

   b. In or around late 2012 or early 2013, a production meeting took place during which Rudy Gotchie, Assistant Director of Culinary Services at

5

      HUDS, remarked that he did not want any of the cost numbers "nigger-rigged." Gotchie made this comment in front of several black employees who relayed the remark to Mr. Pierre and others.

    c. On or about March 8, 2013, a major snowstorm hit eastern Massachusetts. Arthur Robbins, the dining house manager who made the comment about Haiti after the earthquake, allowed his white employees at HUDS to check into a hotel and receive a full day's pay, per Harvard's standard policy regarding inclement weather. He forced three black Haitian employees to return home in the snow and not receive a full day's pay. The employees filed a grievance and received their pay. Mr. Robbins was terminated.

    d. Throughout his employment, Breslin has frequently asked Mr. Pierre about Haiti and demands that he takes all of his shots whenever he plans a trip there. Breslin has commented numerous times about how dangerous and unsafe Haiti seems.

23. On or about March 11, 2013, Mr. Pierre requested a copy of his personnel file. He was given a copy on March 26, 2013. The file did not include a copy of his grievance regarding the bumping issue or any mention of his complaint regarding the racial slur by Leonard in October 2011. It did not even include a copy of the letter that Mr. Pierre signed on April 6, 2012 regarding the racial slur.

24. HUDS singled out Mr. Pierre for disparate treatment in various other ways. On or about April 6, 2013, Mr. Pierre hurt his foot at work. The manager on duty gave him an accident report sheet and sent him to the HUDS medical clinic. His manager did not give him a physical examination sheet to bring with him, which an injured employee is supposed to receive from his

or her manager to bring to the clinic. The physician at the client examined Mr. Pierre and told him that he should remain out of work three days. Mr. Pierre returned to work anyway on April 8, 2013, when he gave the accident report to his regular supervisors, Spingel and Brian Corcoran.

25. On April 11, 2013, Spingel and Corcoran asked Mr. Pierre to give them his medical file from his visit to the clinic. Mr. Pierre objected, saying that he had already given the accident report and his medical file was private and contained confidential information. The next day, Spingel and Corcoran again demanded the medical file and told Mr. Pierre that if he refused to provide it, they would consider his injury fabricated and if he had any future problems with his foot, they wouldn't believe him. As a result, the following day, Mr. Pierre gave Spingel and Corcoran a copy his medical file from his visit to the clinic, but handwrote at the top that he had been compelled to give the file, then signed his name. Spingel then gave the medical record to human resources.

26. A month or so later, Mr. Pierre asked human resources for a copy of the medical file that he had provided. He was told that he needed a waiver from his doctor to release the information. Spingel then got involved and told human resources to provide Mr. Pierre with a copy of the medical record that Spingel had provided a month earlier. Human resources gave Mr. Pierre a copy of the medical record, but it did not include his handwritten note at the top. Somehow human resources had received another copy of the medical file, one that Mr. Pierre had not provided himself.

27. The hostile environment created a heavy burden on Mr. Pierre that he felt every day at work. The fact that he did not find any record or mention of the racial slur or the grievance regarding his bumping in his personnel file was particularly upsetting.

28. Finally, on April 1, 2013, Mr. Pierre found himself unable to concentrate at work, forgetting what he was doing during the day, and he broke down crying. Corcoran emailed Breslin and a human resources representative and told them that Mr. Pierre had broken down crying and reported feeling sick whenever he comes into work. The email went on to say that this was the result of what the manager, Arthur Robbins, said about Haitian people, and that Mr. Pierre "is from Haiti and is devastated by what has happened with HUDS and with the university."

29. On April 8, 2013, Mr. Pierre approached Breslin to discuss his personnel file. Mr. Pierre asked Breslin why he did not see any mention of his complaint about the racial slur by Leonard in October 2011 or his grievance regarding bumping. Breslin dismissed his concerns, telling Mr. Pierre to talk to his supervisor, Spingel, about it. Mr. Pierre persisted and demanded to know why Harvard had not done anything about the racial slur or responded to his grievance. Then Breslin lashed out at Mr. Pierre, saying: "Little monkey, I can put you down."

30. On April 23, 2013, Mr. Pierre filed a complaint of discrimination against Harvard and Breslin with the Massachusetts Commission Against Discrimination, alleging discrimination based on race and national origin, hostile work environment, and retaliation for complaining about discriminatory treatment.[2] As authorized by M.G.L. c. 151B, § 9, Mr. Pierre has chosen to withdraw the administrative complaint and pursue his complaint in this forum.

31. After filing the administrative complaint, Harvard has taken further steps to retaliate against Mr. Pierre by singling him out for disparate treatment.

---

[2] The MCAD complaint names Breslin and Harvard as respondents, but not Spingel. Spingel is referred to repeatedly within the complaint, however, and Harvard included information that Spingel provided in its position statement filed with MCAD. Spingel was therefore on notice regarding Plaintiff's claims. There was no need to amend the MCAD complaint to name him as a party prior to filing this action.

32. During the final weeks of the academic year, HUDS reduced Mr. Pierre's schedule to 32 hours per week. He inquired with human resources and was told that business was slow, but if any storekeeper were needed during his days off, he would be contacted.

33. The following week, Mr. Pierre discovered that HUDS had used employees from other work units within HUDS (i.e. not CSG) to perform his duties during the hours that had been removed from his schedule, despite the fact that HUDS promised not to do so and the CBA prohibited such action. Mr. Pierre is unaware of any white employee in CSG whose hours were reduced by HUDS only to have HUDS fill the eliminated hours with employees not from CSG.

34. The hostility and harassment directed at Mr. Pierre and that pervades his work environment has caused him significant emotional harm, forcing Mr. Pierre to receive medical and mental health treatment. He has been prescribed several medications for anxiety and depression as a result of this treatment and the consequential emotional distress.

## COUNT I

### (M.G.L. c. 151B)
### (Hostile Work Environment)

The actions of Defendants as described above, including, *inter alia*, creating and allowing a work environment permeated with intimidation based on race and national origin that unreasonable interfered with Plaintiff's ability to perform his job, constitute discrimination on the basis of race and national in violation of M.G.L. c. 151B, § 4 as to Harvard, and in violation of § 4(4A) and §4(5) as to Spingel and Breslin. The claim is brought under M.G.L. c. 151B, § 9.

## COUNT II

### (M.G.L. c. 151B)

The actions of Defendants as described above, including, *inter alia*, refusing to allow Plaintiff to bump a less senior truck driver and/or keep his higher truck driver wage, not

responding to his grievance regarding the bumping issue, compelling him to disclose confidential medical information, and reducing his hours on the false pretense that he was not needed during the shift in question, all due to his race and/or national origin, constitute discrimination on the basis of race and national origin in violation of M.G.L. c. 151B, § 4 as to Harvard, and in violation of § 4(4A) and §4(5) as to Spingel and Breslin. The claim is brought under M.G.L. c. 151B, § 9.

## COUNT III

### (M.G.L. c. 151B)
### (Retaliation)

The actions of Defendants as described above, including, *inter alia*, refusing to allow Plaintiff to bump a less senior truck driver and/or keep his higher truck driver wage due to his complaint about the racial slur by Don Leonard and not responding to his grievance regarding the bumping issue, after he complained about the racial slur by Leonard, and then compelling him to disclose confidential medical information and reducing his hours on the false pretense that he was not needed during the shift in question, after he filed his MCAD action, constitute retaliation for asserting his rights under Chapter 151B in violation of M.G.L. c. 151B, § 4(4A). This claim is brought pursuant to M.G.L. c. 151B, § 9.

## COUNT III

### (Intentional Infliction of Emotional Distress)
### (except Spingel)

The actions of Defendants as described above, including, *inter alia*, tolerating a work environment permeated by hostility toward black and Haitian employees and making threatening and racially hostile remarks to Mr. Pierre, constitutes intentional and/or reckless conduct of an extreme and outrageous nature, causing severe emotional distress to Plaintiff.

WHEREFORE, Plaintiff prays this Court:

1. ORDER the Defendants to pay the Plaintiff compensatory damages for lost wages, back pay, and front pay;

2. ORDER the Defendants to pay the Plaintiffs compensatory damages for emotional distress and other injuries;

3. ORDER the Defendants to pay punitive damages and the Plaintiff's attorneys' fees and costs; and

4. Any further relief as is just and necessary.

Respectfully submitted,

PLAINTIFF WADLEY PIERRE,

By his attorneys,

Joseph L. Sulman, BBO #663635
David I. Brody, BBO#676984
Law Office of Joseph L. Sulman
185 Devonshire Street, Suite 502
Boston, MA 02110
(617) 521-8600
jsulman@sulmanlaw.com

July 26, 2013

11